## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CC-01184-SCT

*JERRY FULCE*

*v.*

*PUBLIC EMPLOYEES RETIREMENT SYSTEM OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/14/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL H. STEELE |
| ATTORNEY FOR APPELLEE: | MARY MARGARET BOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 04/20/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/11/2000 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### INTRODUCTION

¶1. The issue before the Court is whether the decision of the Mississippi Public Employees Retirement System (PERS) to terminate the disability benefits of Mrs. Jerry Fulce was supported by substantial evidence, notwithstanding that she had previously been receiving said benefits for several years, and that she continues to receive Social Security disability benefits. Mrs. Fulce also contends that a conflict of interest exists within the PERS Disability Appeals Committee and that she was not sufficiently notified of her right to the assistance of counsel while before the Committee.

### STATEMENT OF THE FACTS AND CASE

¶2. In January, 1985, Mrs. Fulce began working with the State Department of Audit as a Property Officer I. Her duties required her to visit public schools within her assigned area in order to check attendance figures. In September, 1987, Mrs. Fulce suffered a fractured vertebrae in an automobile accident. She was required to wear a cervical collar for approximately three (3) months, and as of August, 1988, she had completely recovered and suffered no lasting adverse effects. In 1993, Mrs. Fulce underwent a hysterectomy, during which a cervical carcinoma was discovered. She received two (2) radiation implants as treatment of this condition. Effective June 30 , 1993, Mrs. Fulce resigned from her position as Property Officer I. At that point, she had accumulated 8 ½ years of service credit with PERS. By Order dated October 7, 1994, the Social Security Administration (SSA) found Mrs. Fulce to be disabled and awarded her disability benefits. The Administrative Law Judge ruled that Mrs. Fulce had severe impairments because

of "neck and back pains secondary to a motor vehicle accident, a history of cancer of the cervix, and major recurrent depression." Follow up medical exams throughout 1994 revealed that Mrs. Fulce was doing well post-operatively in reference to her cancer, except for bouts with diarrhea which resulted from her colon being burned by the radiation implants. She had no recurrence of her cervical cancer. Mrs. Fulce was approved for PERS disability benefits effective December 1, 1994. At the time of her approval to receive PERS benefits, it was the policy of PERS that any member who had been approved for SSA benefits would also be approved for PERS benefits. That policy has since been discontinued. In January, 1997, Mrs. Fulce was diagnosed as having sleep apnea, a sleeping disorder. For treatment of this condition, she periodically uses a CPAP machine which helps her sleep better. When she uses it, she has done well on the CPAP. Also, in October, 1997, Mrs. Fulce was diagnosed as having non-insulin dependent diabetes.

¶3. In addition to the conditions listed above, Mrs. Fulce asserts that she also suffers from or has suffered from the following ailments: neck, leg, hip, and back pain; limited range of motion of the neck; cramping in the legs and feet; tingling and numbness in the feet; stress fractures of both feet; nerve damage in the toes; swollen feet, sometimes requiring elevation; degenerative disc disease in the back; a weight problem; aggravation of her problem with diarrhea; depression; and daily loss of memory.

¶4. Under Miss. Code Ann. § 25-11-113 (3) (1999), individuals receiving a disability retirement allowance may be required to undergo subsequent periodic medical exams in order to determine if said individual is still disabled. Mrs. Fulce was required to do this, and PERS received her *Statement of Reexamination by Physician* on November 5, 1997. The PERS medical board reviewed her medical documentation on January 22, 1998, and again on March 19, 1998. Upon reviewing Mrs. Fulce's medical records, the PERS Medical Board, pursuant to Miss. Code Ann. § 25-11-113(6), voted to terminate her disability benefits, stating that the record did not support the claim of an inability to perform the job as a Property Officer I with the State Department of Audit. On April 28, 1998, the PERS Board of Trustees voted unanimously to adopt the findings of the Medical Board, and ordered the termination of Mrs. Fulce's benefits effective August 1, 1998. Mrs. Fulce appealed, and PERS received her Notice of Appeal on June 9, 1998. Mrs. Fulce's appeal was heard by the PERS Disability Appeals Committee on August 10, 1998. Upon completion of the proceedings, the Appeals Committee recommended the termination of Mrs. Fulce's benefits. By Order dated August 25, 1998, the Board of Trustees adopted the recommendation of the Appeals Committee. Aggrieved, Mrs. Fulce appealed to the Circuit Court, First Judicial District of Hinds County. By Order dated June 14, 1999, the Honorable W. Swan Yerger, Circuit Judge, affirmed the decision of the Board of Trustees. Aggrieved by the decision of the circuit court, Mrs. Fulce now appeals to this Court, raising the following issue:

## ISSUE

**Whether the Public Employees Retirement System of Mississippi (PERS) ignored the substantial evidence in the record in terminating the disability benefits of Mrs. Fulce and whether procedural safeguards were improperly ignored by the PERS Committee in making its finding that she was no longer disabled.**

¶5. Mrs. Fulce assigns as error (1) whether the standards of law in this case were correctly followed, particularly whether the decision of PERS was supported by substantial evidence in the record; (2) whether there existed conflicts of interest within the Disability Appeals Committee; and (3) whether she was fully informed of her right to be represented by counsel at her hearing before the Disability Appeals Committee.

Therefore, this Court addresses these three questions.

## LEGAL ANALYSIS

### Were the applicable standards of law followed in this case, particularly was the decision of PERS supported by substantial evidence?

¶6. "This Court's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Sprouse v. Mississippi Employment Sec. Comm'n*, 639 So.2d 901, 902 (Miss. 1994); *Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So.2d 1211, 1215 (Miss. 1993); *Mississippi Employment Sec. Comm'n v. PDN, Inc.,* 586 So.2d 838, 840 (Miss. 1991). This Court may neither substitute its own judgment for that of the agency which rendered the decision, nor reweigh the facts of the case. *Mississippi Pub. Serv. Comm'n v. Merchants Truck Line, Inc.*, 598 So.2d 778, 782 (Miss. 1992). "There is a rebuttable presumption in favor of the action of an administrative agency and the burden of proof is on the one challenging its action." *Ricks v. Mississippi State Dep't of Health*, 719 So.2d 173, 177 (Miss. 1998) (quoting *County Bd. of Educ. of Alcorn County v. Parents & Custodians of Students at Rienzi Sch. Attendance Ctr.*, 251 Miss. 195, 205, 168 So.2d 814, 818 (1964)). "[This Court] give[s] due deference to the factual findings of the administrative agency and to the [judge], who adopted the same findings." *State Farm Ins. Co. v. Gay*, 526 So.2d 534, 535 (Miss. 1988).

¶7. As noted above, Mrs. Fulce asserts that she suffers from a number of ailments. It is her contention that these ailments are so severe as to render her permanently disabled, and thus, eligible for disability benefits from PERS. The SSA found her to be disabled based on (1) injuries suffered in a September, 1987, automobile accident, (2) cervical cancer discovered in 1993, and (3) depression, as diagnosed in 1994. Regarding injuries sustained in the automobile accident, she suffered no neurological problems secondary to the injury, and follow up visits with her treating physician through 1988 revealed that she was doing well and not having any neck pain. Regarding her cervical cancer, follow-up exams through 1994 revealed that she was doing well post-operatively. Mrs. Fulce admits her cancer is in remission. Regarding her depression, she stated that she takes medication on a daily basis for this condition. However, the only time she has ever been examined by a psychologist or psychiatrist was in 1994 (when she was diagnosed as suffering from depression).

¶8. Furthermore, Mrs. Fulce asserts that she significantly suffers from diarrhea, sleep apnea, and diabetes. Mrs. Fulce states that the radiation treatment she received because of her cancer burned her colon, causing her diarrhea problems. Although she says this problem is serious, she admitted to the Appeals Committee that she takes over-the-counter Immodium, and that is the only medicine she has ever tried for her diarrhea. Additionally, she admits that other than undergoing a colonoscopy to initially address her problem, she has never followed up with a gastrointestinal doctor regarding her diarrhea. Because of her sleeping disorder, she has a CPAP machine, which effectively helps her sleep. When she uses the CPAP, she does very well. However, she told the Appeals Committee that she only uses it anywhere from one to three times a week, and on the nights that she does not use it, she feels sleepy the next day. Mrs. Fulce informed the Appeals Committee that she was diagnosed as a non-insulin dependent diabetic. She takes Glucontrol two times a day to control this condition.

¶9. In addition to these conditions, Mrs. Fulce also claims to suffer from various bodily pains and abnormalities. Notwithstanding these asserted ailments, she admitted to the Appeals Committee that the only physician she would ever go to, regardless of the problem, was a gynecologist. She further stated that in the year prior to her appeal, she had only been to this doctor twice, once for her annual cancer exam, and the other time was when she was diagnosed with diabetes.

¶10. Undoubtedly, Mrs. Fulce has suffered from a wide range of medical ailments in the past. However, the lack of recent medical documentation in the record makes it impossible for this Court to determine whether she is presently disabled, and therefore, ineligible for PERS disability benefits. She had not been under the continuous care of a physician for some time prior to 1998. In her 1996 and 1997 *Statements of Reexamination by Physician*, the reporting physician was of the opinion that Mrs. Fulce was still totally and permanently disabled. However, these reports are extremely brief and provide very little information regarding adverse medical conditions. Similarly, the PERS orders terminating Mrs. Fulce's benefits offer little which would assist this Court in its present review. The fact that Mrs. Fulce continues to receive SSA benefits is not helpful on this issue. At the time Mrs. Fulce was approved for PERS disability benefits, it was the policy of PERS to accept a SSA determination of disability in lieu of a similar determination by its own Medical Board, when considering an initial award of benefits. Miss. Code Ann. § 25-11-113(6) deals with re-examination of recipients, and provides that if the *Medical Board* finds, after re-examination of a disability benefits recipient, that the individual is able to return to work, the Board of Trustees, upon certification of the *Medical Board's* findings, may terminate the individual's disability benefits. Based on the lack of sufficient medical information in the record presently before this Court, we are unable to determine whether the decision of PERS was supported by substantial evidence. Accordingly, we remand this matter back to PERS, so that it may reconsider Mrs. Fulce's present condition once she has been throughly re-examined by the appropriate medical personnel.

### Was there a conflict of interest within the Disability Appeals Committee?

¶11. "[T]here is a presumption that the officers conducting the hearing and the members of the Board behave honestly and fairly in the conduct of the hearings and in the decision-making process. Absent some showing of personal or financial interest on the part of the hearing officer or evidence of misconduct on the officer's part, this presumption is not overcome. The hearing officer might well be an employee of the permitting board or a member of the board itself." *United Cement Co. v. Safe Air for the Env't, Inc.*, 558 So.2d 840, 842-43 (Miss. 1990).

¶12. The Disability Appeals Committee which heard Mrs. Fulce's appeal on August 10, 1998, was comprised of Special Assistant Attorney General Trish Abston and three physicians: Dr. Trespacz, Dr. Duddleston, and Dr. Nicholas. During the course of the hearing, each of the physicians questioned Mrs. Fulce about her health and prior medical treatment. On appeal, Mrs. Fulce argues that these physicians assumed an adversarial role when they questioned her, and alleges that, in light of this supposed adversarial position, a conflict of interest arose once the doctors voted on her appeal. She further asserts that it was unnecessary for the physicians sitting on the Committee to question her at the hearing because PERS was represented by counsel, said counsel being able to elicit all necessary information. She finishes her argument by claiming to be prejudiced by this alleged conflict of interest. No authority has been cited by Mrs. Fulce or found by this Court which supports her argument.

¶13. Mrs. Fulce also argues that some of the doctors who sat on the Disability Appeals Committee and

reviewed the Medical Board's decision to terminate her benefits also sat on the Medical Board itself. In essence, she argues that these doctors were reviewing their own decision, which gave rise to a conflict of interest. The record does not indicate who sat on the Medical Board that initially voted to terminate Mrs. Fulce's disability benefits, and Mrs. Fulce fails to provide any proof as to the identities of the board members. Therefore, this argument also fails, and we hold that no conflict of interest existed within the Disability Appeals Committee.

## Was Mrs. Fulce fully informed of her right to be represented by counsel

## at her hearing before the Disability Appeals Committee?

¶14. Mrs. Fulce claims that she was never clearly instructed that she had a right to have an attorney present during the hearing before the Appeals Committee. PERS Regulation 42 states that, among other things, individuals appealing a decision of PERS may have counsel present at any appeals hearing. The record contains three letters from PERS addressed to Mrs. Fulce, those letters are dated May 11, 1998, June 18, 1998, and July 17, 1998. Each of these letters state that a copy of PERS Regulation 42 is enclosed. The record also contains a Notice of Appeal, executed by Mrs. Fulce, dated June 8, 1998, which was sent to PERS. This form is completely filled out, with the exception of paragraph two, which provides space for the "[n]ame, mailing address and telephone number of Appealing Party's attorney, if any." At the very least, Mrs. Fulce should have been made aware of her right to representation before the Appeals Committee based on paragraph two of the Notice of Appeal she executed. Since she filled out every other paragraph of the Notice of Appeal, she had to have read paragraph two. Even if she did not fully understand her right to counsel after reading the Notice of Appeal, she should have inquired further about that right. It also seems more likely than not that she received at least one of the three PERS Regulation 42 notices along with the three aforementioned letters. Accordingly, we hold that Mrs. Fulce had been sufficiently informed of her right of representation at the hearing before the Appeals Committee.

## CONCLUSION

¶15. This matter is reversed and remanded back to the Mississippi Public Employees Retirement System so that it may further review Mrs. Fulce's medical condition once she has been re-examined by the necessary medical personnel. The other assignments of error contained herein are not well-taken.

¶16. **REVERSED AND REMANDED.**

**BANKS, P.J., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. PITTMAN, P.J., NOT PARTICIPATING.**