## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2000-CC-00508-SCT

*JOANNA H. DOYLE*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2000 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MAGER A. VARNADO, JR. |
| ATTORNEY FOR APPELLEE: | MARY MARGARET BOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 02/28/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/21/2002 |

### BEFORE SMITH, P.J., COBB AND DIAZ, JJ.

### SMITH, PRESIDING JUSTICE, FOR THE COURT:

¶1. This is an appeal from an order of the Circuit Court of Hinds County affirming the determination of the Public Employees Retirement System ("PERS") to deny disability benefits to Joanna H. Doyle ("Doyle"), a former employee of the Harrison County Board of Supervisors.

### FACTS

¶2. Doyle began working for the Harrison County Board of Supervisors as a Mapping Analyst and Deputy Tax Assessor in 1986. Doyle terminated her employment in September 1996, though her last day of work was actually in July 1996. Doyle's duties included drawing and reviewing maps, which required her to use drafting tools and to hold and grasp objects. She was frequently required to lift plat books weighing twenty to thirty pounds. Her duties required her to walk, sit, squat, and stand. Because of her physical problems, Doyle's employer placed her on light duty, which involved updating the computer. Doyle testified that her physical problems began in November 1994 when a box fell on her head. Doyle's medical records actually date from 1991, when she was diagnosed with degenerative disc disease. She has undergone surgery, physical therapy, and drug treatment. She has also been diagnosed with fibromyalgia and osteoporosis. Doyle testified that she "[has] pain everywhere and it never goes away." She stated that she cannot lift more than a glass of water. Doyle stated that her physical condition eventually prevented her from sitting and operating the computer at work.

¶3. Doyle voluntarily terminated her employment in September 1996, and she applied for disability benefits on September 20, 1996. Doyle's application was denied by the PERS Medical Board, and Doyle appealed to the Disability Appeals Committee. The Disability Appeals Committee, in a de novo proceeding on February 16, 1998, received evidence and heard testimony. The Disability Appeals Committee found that there was insufficient evidence to support Doyle's claim of permanent disability and recommended that the

claim be denied. The PERS Board of Trustees affirmed the recommendation of the Disability Appeals Committee by order dated February 24, 1998.

¶4. Having exhausted all available administrative remedies, Doyle prosecuted an appeal to the Circuit Court of Hinds County, First Judicial District. *See* Miss. Code Ann. § 25-11-120 (2) (1999). By order dated March 6, 2000, Circuit Judge James E. Graves, Jr. affirmed the PERS determination, finding that the denial of disability benefits to Doyle was supported by substantial evidence and was not arbitrary and capricious. Doyle timely filed a notice of appeal to this Court. She argues that the circuit court erred in affirming the order of the PERS Board of Trustees.

## STANDARD OF REVIEW

¶5. "This Court's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Fulce v. Public Employees Ret. Sys.*, 759 So. 2d 401, 404 (Miss. 2000); *Sprouse v. Mississippi Employment Sec. Comm'n*, 639 So. 2d 901, 902 (Miss. 1994); *Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993). "There is a rebuttable presumption in favor of the action of an administrative agency, and the burden of proof is on the one challenging its action." *Ricks v. Mississippi State Dep't of Health*, 719 So. 2d 173, 177 (Miss.1998) (quoting *County Bd. of Educ. of Alcorn County v. Parents & Custodians of Students at Rienzi Sch. Attendance Ctr.*, 251 Miss. 195, 205, 168 So. 2d 814, 818 (1964)). This Court may neither substitute its own judgment for that of the agency which rendered the decision, nor reweigh the facts of the case. *Fulce*, 759 So. 2d at 404 (citing *Mississippi Pub. Serv. Comm'n v. Merchants Truck Line, Inc.*, 598 So. 2d 778, 782 (Miss.1992)). "[This Court] give[s] due deference to the factual findings of the administrative agency and to the [judge], who adopted the same findings." *State Farm Ins. Co. v. Gay*, 526 So. 2d 534, 535 (Miss. 1988).

## DISCUSSION

### WHETHER THE CIRCUIT COURT ERRED IN FINDING THAT THE PERS DETERMINATION DENYING DISABILITY BENEFITS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND WAS NOT ARBITRARY AND CAPRICIOUS.

¶6. Doyle seeks permanent disability benefits under Miss. Code Ann. § 25-11-113(1)(a) (1999), which states in pertinent part:

> [A]ny active member in state service who has at least four (4) years of membership service credit may be retired by the board of trustees ... provided that the medical board, after a medical examination, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired.

Section 25-11-113(1)(a) defines "disability" as:

> ... the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees'

Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation.

¶7. It is evident from the record that Doyle has suffered ongoing physical ailments requiring extensive treatment. The medical records submitted by Doyle indicate that she has been diagnosed with degenerative disc disease, osteoporosis, and fibromyalgia. Doyle underwent four surgeries on her spinal column in 1991, 1996, and 1997. She has also undergone drug treatment and physical therapy. She has continuing problems with pain in her neck, back, and upper extremities. The medical records indicate that she has been treated by at least six physicians. Doyle claims that her physical limitations, in combination with her pain and the side effects from her pain medication, prevent her from continuing her employment. She argues that the Disability Appeals Committee arbitrarily ignored the opinion of one of her treating physicians, Dr. John McCloskey, that she is a candidate for Social Security disability.

¶8. The issue before the Medical Board and, thereafter, the Disability Appeals Committee and Board of Trustees, was not whether Doyle suffers from physical injuries, but whether Doyle could continue to function in her position with the Harrison County Board of Supervisors at the time she terminated her employment. The issue before this Court is not whether there was evidence in support of Doyle's disability, but whether there was substantial evidence to support the finding of the administrative agency. *Public Employees' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891(Miss. 2001). Here there was substantial evidence to support the denial of benefits to Doyle and that determination, therefore, was not arbitrary and capricious.

¶9. Doyle's medical records contain inconsistencies as to Doyle's progress and her response to treatment. The medical notes of Dr. Charles Winters after the surgery in 1991 state, "At this point in time, I think she is doing much better than she was prior to surgery. I have recommended that we go ahead and set her up with the therapist for three times a week of PT for strengthening exercises." One month later, Dr. Winters wrote, "She is doing well, no complaints or problems." In 1994, Doyle returned to Dr. Winters with complaints of pain. Dr. Winters notes state that her neurological exam was "entirely normal" and that Doyle's nerve conduction studies were "normal."

¶10. Following the 1996 surgery, Dr. John McCloskey wrote on August 31, 1996, just days prior to the termination of Doyle's employment:

> It's nearly a month since she underwent surgery. She says that surgery has helped a lot. She's not in the constant pain that she was. Her shoulders and arms feel good. She is having some neck pain and stiffness. Today I removed one of her subcuticular sutures. Her wound looks great. She's able to walk on her heels and toes. There are no focal deficits in her arms or legs. Interestingly, her back and leg pain is better. I plan to see her again in two weeks, at which time she'll have a cervical spine x-ray. She is very pleased with the results of her surgery.

Dr. Paul Pavlov, in a statement dated August 20, 1996, was asked whether he considered Doyle's disability to be permanent. His response was "unknown." Dr. Pavlov's medical notes, dated August 1996, state that he expected Doyle to have partial disability for at least nine months and that she might have permanent disability for at least nine months. Dr. McCloskey's notes from September 1996 state that Doyle reported neck and arm pain with numbness and tingling in the forearms and hands suggestive of carpal tunnel syndrome and that Doyle reported having several falls with her right leg giving way.

¶11. Much of the submitted documentation relates to medical examinations which occurred after Doyle's termination from employment. PERS observes that the question before the Medical Board and Disability Appeals Committee was whether Doyle was disabled at the time she terminated her employment. Doyle asserts that the subsequent documentation confirms the existence of conditions existing before her date of last employment.

¶12. Doyle relies primarily on the medical notes of Dr. McCloskey, dated April 7, 1997, which state that Doyle "is an excellent candidate for Social Security Disability... I don't think there's any way that she can work. I don't think there's anything that she'd be educationally suited or physically prepared to do." However, Dr. McCloskey stated in notes dated August 23, 1997, "On neurologic exam she's very bright and alert. She's up and about. She doesn't require an appliance. She's not wearing a collar or a back brace. Her grip is fairly strong. She's not hyperreflexic. There's no Hoffman reflex. There's a mild right foot drop."

¶13. The Medical Board reviewed Doyle's application and medical documentation and deferred taking action on Doyle's claim pending further medical evaluation. In April 1997, Doyle saw Dr. David Collipp for an Independent Medical Examination ("IME"). His evaluation states as follows:

> ... This patient has significant complaints of pain in trying to bring her arms above her head and starts going into a bizarre grasping of her left hand. The power exam for the upper limbs is similar to that of the lower limbs with this patient not able to demonstrate her full ability. **Sensory exam was not examined as this patient was already showing that she was not going to participate fully with the examination, and the sensory examination is so clearly subjective. Range of motion for the upper limbs was likewise within total complete normal limits.**

> Overall, **this patient did not participate with examination**, but I do believe that after having had a cervical procedure a well as a lumbar procedure, there are going to be some demonstrable findings if she were to participate. I do not know that these would be sufficient for her to not be at work at this time. **As is well known to the physicians who practice in this field, while we cannot measure pain, we can measure function. This patient's lack of participation during examination suggests that she does not want her full level of function to be known.**

> I have reviewed her films and do see significant osteophytosis on the pre-laminectomy films. I do note that the most recent nerve conduction studies were normal for the upper limbs.

> **At this point, I believe that this patient probably can tolerate her relatively sedentary job which requires carrying of deed books, getting maps out and preparing maps at the county tax assessor's office. I would prefer that she had fully participated with the examination and given her full effort, as opposed to the approach that she took.**

(emphasis added). When asked about her lack of cooperation at the IME, Doyle responded that she had driven three hours from Biloxi for the appointment with Dr. Collipp, then had to wait three hours in the lobby for the examination. Doyle stated that Dr. Collipp conducted a "bad examination."

¶14. Dr. Collipp recommended a Functional Capacity Evaluation ("FCE") to better delineate Doyle's capabilities. The FCE, an extensive four-hour examination, was performed in May 1997. Pertinent portions of the therapist's report state:

> The actual test results indicate that Ms. Doyle is not able to work today; however there were

indications of **submaximal effort**....

<u>BLANKENSHIP SYSTEM BEHAVIORAL PROFILE</u>

Inappropriate Illness Behavior is an observable and measurable behavior which is out of proportion to the impairment and is measured by Non-Organic Signs, Inappropriate Symptoms, High Pain Drawing scores, and movement patterns which improve by distraction....

Ms. Doyle exhibited Symptom Exaggeration and she failed 35% of her Validity Criteria giving her an Equivocal Validity Profile, indicating partial **submaximal effort**....

<u>DISTRACTED MOVEMENT PATTERNS</u>

The patient's movement patterns are observed by distraction throughout the evaluation and compared to the movement patterns exhibited during the Repetitive Movement Tests. **If there are any improvements in the movement patterns by distraction ... this indicates the patient is attempting to control the test results.**

<u>Summary of Observed Distracted Movement Patterns</u>

**Ms. Doyle's movement patterns improved significantly by distraction....**

(emphasis added). When questioned at the hearing regarding these findings, Doyle stated that she had not taken her pain medication the day of the FCE and that she may have "had an attitude."

¶15. The Disability Appeals Committee noted in its Findings of Fact and Conclusions of Law Doyle's failure to cooperate at the examination by Dr. Collip as well as the findings of the FCE. The Committee found Doyle's explanation for her behavior to be vague and insufficient. The Committee also noted that Doyle's testimony at the hearing "was at times vague and not credible." The Committee recognized that Doyle's medical records indicate that she suffers from physical injuries requiring extensive treatment. The Committee concluded that the injuries did not meet the definition of disability contained in § 25-11-113. This Court is not entitled to weigh the facts of the case, nor to weigh Doyle's credibility. ***Dishmon***, 797 So. 2d at 893; ***Fulce***, 759 So. 2d at 404. Such questions are for the trier of fact. ***Id.***

¶16. Doyle argues that the Medical Board and Disability Appeals Committee should have accorded great weight to the fact that Dr. McCloskey stated in 1997, seven months after Doyle had terminated her employment, that she was a candidate for Social Security. Doyle argues that the definition of disability employed in determining Social Security disability is more stringent than that utilized by PERS. *See* 42 U.S.C. § 423(d)(1)(a). This argument is specious. First, at the time PERS denied Doyle's application for benefits, her Social Security application was still pending. There had been no determination that Doyle was disabled by the Social Security Administration, and there is nothing in the record to indicate whether Doyle has ever been determined to be disabled by that agency. Second, even had there been such a determination, PERS is not bound by any finding of the Social Security Administration. ***Dishmon***, 797 So. 2d at 895-96.

¶17. Doyle also argues that FCE examiners "always defer to a treating physician," and that the treating physician is in a better position to determine whether a patient is disabled. The law contains no such duty of deference, and, again, this Court cannot reweigh the facts presented to the Disability Appeals Committee.

Furthermore, Doyle's physicians are not entitled to determine whether she is disabled as that term is defined in § 25-11-113. That determination is for PERS.

¶18. In a similar case, ***Byrd v. Public Employees' Ret. Sys.***, 774 So. 2d 434 (Miss. 2000), an employee, Byrd, argued that a PERS decision denying disability benefits should be overturned where her treating physician found her to be disabled, while a second physician and the therapist administering the FCE were of the opinion that Byrd could return to work. This Court affirmed the PERS determination, finding that the opinions of the second physician and the therapist, standing alone, were sufficient to support a finding that Byrd was not permanently disabled. ***Id.*** at 437. The Court stated, "In rendering its decision to deny Byrd's application for permanent disability benefits, PERS obviously gave more weight to the findings of [the second physician] and [the therapist] than was given to the findings of [the treating physician]. Such an act was within PERS' discretion." ***Id.***

## CONCLUSION

¶19. Upon careful review of the record, this Court finds that the circuit court correctly concluded that the decision of PERS to deny disability benefits to Doyle is supported by substantial evidence and is neither arbitrary nor capricious. The Disability Appeals Committee found that Doyle's claim lacked credibility due to her testimony at the hearing as well has her failure to cooperate at the IME and the results of the FCE. The medical records submitted by Doyle, though they indicate that Doyle suffered ongoing physical injuries, contain inconsistencies as to Doyle's progress and her response to her treatments. The determination that Doyle is not entitled to disability benefits will not be disturbed on appeal. Therefore, the judgment of the Hinds County Circuit Court is affirmed.

¶20. **AFFIRMED.**

> **PITTMAN, C.J., McRAE, P.J., WALLER, COBB, DIAZ AND CARLSON, JJ., CONCUR. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., NOT PARTICIPATING.**