ON WRIT OF CERTIORARI

PIERCE, Justice, for the Court.
¶ 1. This appeal by Dorothy Knight arises from an order entered by the Circuit Court of the First Judicial District of Hinds County, Mississippi, on December 6, 2011. The circuit court affirmed an administrative decision by the Public Employees Retirement System (hereinafter “PERS”) denying disability benefits to Dorothy Knight, a Mississippi State Senate employee.
¶ 2. Knight’s claim for disability retirement was reviewed and denied by the PERS Medical Board, and she appealed to the PERS Disability Appeals Committee (hereinafter “Committee”). A hearing was held in which testimony and evidence were received. The Committee presented its recommendation to deny Knight’s claim to the PERS Board of Trustees (hereinafter “Board”). On August 28, 2007, the Board agreed with the recommendation and denied disability benefits to Knight. On appeal to the circuit court, Judge W. Swan Yerger ruled in favor of PERS, finding that its decision was supported by substantial evidence. Knight then appealed the circuit court’s ruling to the Mississippi Supreme Court, which referred it to the Court of Appeals, which affirmed the circuit court’s decision. Knight’s appeal is now before this Court on writ of certiorari. Having reviewed the record, this Court reverses the Court of Appeals’ and circuit court’s rulings.
STATEMENT OF THE FACTS
¶ 3. Knight worked as a committee assistant'for the Mississippi State Senate for more than twenty-five years. She was required to be on her feet most of the day, walk up and down stairs, stand at the copy machine, prepare for committee meetings, and perform administrative and clerical tasks. According to her supervisors and colleagues, she was a hard worker who almost never missed work.
¶ 4. On April 28, 2006, she filed an application for retirement benefits with PERS, seeking non-duty-related disability benefits. Within a few months, she had resigned from her job. Her medical information on her PERS application stated that her disability consisted of severe pain for seventeen years which came from the insides of her feet; numbness in her feet, which caused her to feel off-balance; and swollen and red feet, with broken capillaries on top of her feet.
¶ 5. The PERS Disability Appeals Committee conducted formal hearings and agreed with the finding of the Medical Board that Knight had failed to prove permanent disability. Several hearings were held before the Committee. Knight confirmed that she had many problems with her feet, including pain, numbness, and swelling. She acknowledged that she had resigned from the Mississippi State Senate because of the increasing severity of the pain attributed to her feet problems. She stated that she had agonizing pain with every step she took and that her feet and legs were numb all the way to her knees. She testified that the only issue that prevented her from working was her *914 feet, and eventually, her restless-leg syndrome. Knight stated that she never asked her employer for assistance in moving around, such as a scooter or wheelchair. She believed this would inhibit her work, because she was required to move constantly and quickly. She had tried different types of shoes to alleviate the pain, but none helped. However, she admitted that she had never tried wearing orthopedic shoes or tennis shoes at work. Eventually, she stopped leaving the office for lunch, because it became too painful to walk. She did not apply for benefits with the Social Security Administration, but she has been receiving Special Service benefits.
¶ 6. Knight testified to seeing many physicians over the years. She testified that she was diagnosed with peripheral neuro-pathy in 1988 or 1989 by Dr. Yawn, who is now deceased, but no records have been obtained. Knight stated that these records had been transferred to Dr. Ann Meyers, but they had been destroyed after seven years. Dr. Richard Weddle performed a nerve-conduction study on Knight, which turned out to be normal. He told her that she did not have peripheral neuropathy and diagnosed her with vascular headaches, restless-leg syndrome, and some edema of the feet with discoloration of skin due to venous insufficiency, most likely. Dr. Alan Moore also conducted a nerve-conduction study on Knight, which also was normal. He believed that there was no evidence of neuropathy which caused her feet pain. The examination was consistent with an orthopedic process.
¶7. The Committee had Dr. Samuel Peeples evaluate Knight, and he found that, while her symptoms were “very suggestive of peripheral neuropathy,” which would indicate the possibility of disability, her nerve-conduction studies over the last two years did not support a conclusive diagnosis of peripheral neuropathy. He suggested that she may need repeat nerve-conduction studies, since her symptoms had worsened. He could not state definitively that she was disabled but agreed that her work conditions seemed to aggravate her symptoms.
¶ 8. The Committee also referred Knight to Dr. Phillip Blount. He reviewed three electrodiagnostic evaluations, each of which failed to demonstrate peripheral neuropathy. He found that it was possible that she did have peripheral neuropathy which was not detected on nerve-conduction studies or needle EMG because un-myelinated type C pain fibers, which cause painful neuropathy, are not detected on routine electrodiagnostic evaluations. He found that she was suitable for sedentary work but not for walking long distances. He referred her to an orthotist to modify her shoes to include a metatarsal bar to offload the metatarsal head and to provide cushion. Finally, he indicated that she had reached her maximum medical improvement with a seventeen percent whole-person impairment rating based on mobility and gait.
¶ 9. On November 10, 2006, Dr. B.T. Sullivan performed surgery to correct a broken bone on the top of her right foot, several broken toes and bunions on each foot. He told Knight that the numbness in her feet and other foot pain were not associated with the broken bones and bunions.
¶ 10. At the Committee hearings, many people testified on behalf of Knight. The Mississippi Senate Comptroller testified that Knight could not perform her job during session because of the increased time she had to spend on her feet. Further, all job positions for which Knight qualified would have similar job requirements. Although Knight had not previously complained of neck problems, three senators who personally had worked with *915 Knight testified that her health had declined, and she was often slumped over, with her neck drawn to one side. Knight responded that she did have neck problems previously and had seen a chiropractor for an adjustment, which helped. Knight’s sister testified that Knight had fallen more than once due to her poor balance, and on one occasion, she had hit her head. While they had lived together, she would wake up to Knight screaming because of her feet pain. One of Knight’s friends stated that she had seen Knight fall in the kitchen multiple times and at the doctor’s office days before the hearing.
¶ 11. As stated earlier, following the PERS decision to deny benefits, Knight appealed to the circuit court. Judge W. Swan Yerger ruled in favor of PERS, finding that the decision was supported by substantial evidence. Knight appealed to this Court, which referred the case to the Court of Appeals, which affirmed the circuit court’s decision. The case is now before this Court on writ of certiorari.
STANDARD OF REVIEW
¶ 12. This Court’s standard of review of an administrative agency’s finding and decisions is well-established. Rule 5.03 of the Uniform Circuit and County Court Rules provides that an agency’s conclusions must remain undisturbed unless the agency’s order: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one’s constitutional rights. Pub. Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (Miss.2000) (citing Fulce v. Pub. Employees’ Ret. Sys., 759 So.2d 401, 404 (Miss.2000); Davis v. Pub. Employees’ Ret. Sys., 750 So.2d 1225, 1229 (Miss.1999); Brinston v. Pub. Employees’ Ret. Sys., 706 So.2d 258, 259 (Miss.Ct.App.1998)). A re-buttable presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency’s action. Miss. Comm’n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993); Brinston, 706 So.2d at 260. This Court is not entitled to substitute its own judgement for that of PERS, and it is impermissible for a reviewing court to reweigh the facts of the case. Marquez, 774 So.2d at 425 (citing Miss. Pub. Serv. Comm’n v. Merchants Truck Line, Inc., 598 So.2d 778, 782 (Miss.1992).
LEGAL ANALYSIS
I. Whether the Court of Appeals erred in ignoring that PERS erroneously based its decision on its reasoning that disability cannot be granted for pain “when no objective reason for that pain can be produced.”
¶ 13. This Court will reverse an agency’s decision only when it is “unsupported by substantial evidence, was arbitrary and capricious, was beyond the power of the agency to make, or violated some constitutional or statutory right of the complaining party.” Pub. Employees’ Ret. Sys. v. Ross, 829 So.2d 1238, 1240 (Miss.2002). “Substantial evidence” has been defined by this Court as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Pub. Employees’ Ret. Sys. v. Dishmon, 17 So.3d 87 (Miss.2009) (citing Marquez, 774 So.2d at 425 (Miss.2000)). “To be substantial, the evidence must be something more than a mere scintilla or suspicion.” Marquez, 774 So.2d at 429. The question before PERS was whether Knight’s claim met the statutory requirements for permanent disability. PERS, as the fact-finder, is responsible for determining which party’s evidence carries more weight. Pub. Employees’ Ret. Sys. v. Howard, 905 So.2d *916 1279, 1287 (Miss.2005). Accordingly, “[if] an agency’s decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious.” Stevison v. Pub. Employees’ Ret. Sys., 966 So.2d 874, 878 (Miss.Ct.App.2007).
¶ 14. This Court is obligated to give substantial deference to an administrative agency when reviewing its decision on appeal, and this Court would exceed its authority if it were to re-evaluate the evidence and “make its own determination of the trustworthiness of some particular testimony.” Pub. Employee’s Ret. Sys. v. Cobb, 839 So.2d 605, 609 (Miss.Ct.App.2003) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992)). The primary question before this Court is whether the record contains substantial evidence to support PERS’ finding that Knight is not disabled. Doyle v. Pub. Employees’ Ret. Sys., 808 So.2d 902, 905 (Miss.2002); Pub. Employees’ Ret. Sys. v. Henderson, 867 So.2d 262, 264 (Miss.Ct.App.2003).
¶ 15. Knight contends that the circuit court erred in affirming the decision of PERS, because its decision is not supported by substantial evidence and is legally incorrect since PERS stated that “there is no statutory provision wherein an award of disability can be granted for pain when no objective reason for that pain can be produced. We have no proof of a medical illness that is causing Knight’s pain.” Based on this, Knight asserts that PERS’ decision is arbitrary and capricious due to its factual inaccuracies and erroneous legal analysis. Further, Knight argues that PERS was incorrect in stating that it cannot award disability based upon complaints of pain in which there is no specific diagnosis to prove its cause objectively. Finally, Knight contends that PERS’ decision is arbitrary and capricious in failing to consider the lay testimony that was presented.
¶ 16. PERS argues that its decision denying Knight’s claim for disability benefits is supported by substantial evidence, is legally correct, and is neither arbitrary nor capricious. The circuit court affirmed PERS’ decision, which found:
The employer’s certification of job description states that Ms. Knight does her job but with pain. Pain is subjective and there is no way to measure it. There is no statutory provision wherein an award of disability can be granted for pain when no objective reason for that pain can be produced. We have no proof of a medical illness that is causing Ms. Knight’s pain. We have noted that she has some arthritis of the feet but that does not explain the complaints of sock like numbness and fever. We cannot recommend disability without persuasive and credible objective medical evidence of a disability. Thus, in this case, we cannot recommend Ms. Knight’s request for disability be approved.
¶ 17. Knight’s medical history is extensive. She has tested positive for hypertension, has migraine headaches, peptic ulcer disease, restless-leg syndrome, edema of the feet, venous insufficiency which has caused skin discoloration in her feet, arthritis, broken bones, osteoporosis, anemia, blood transfusions, high cholesterol, gallstones, stomach ulcers, has had two breast biopsies, a bilateral mastectomy, silicone implants, removal of implants, a hysterectomy, a cholecystectomy, and foot surgery to remedy her hallux abductovalgus. The foot surgery also included a bunionectomy and an asteotomy.[1]
*917 ¶ 18. This Court previously has overturned a prior ruling based on PERS’ lack of substantial evidence to deny an applicant disability benefits. Pub. Employees’ Ret. Sys. v. Dearman, 846 So.2d 1014, 1018 (Miss.2003). Dearman was a teacher for the Jackson County School District. Id. at 1015. She developed many debilitating medical conditions. Id. She sought treatment and was told to seek medical retirement. Id. She ultimately had to retire because she was unable to perform the duties and responsibilities of her job. Id. PERS denied her claim for disability, finding that she was not permanently disabled. Id. at 1016. The circuit court reversed the PERS decision, and PERS appealed. Id. PERS alleged that the circuit court had erred in substituting its judgment for that of PERS and that it had erred in reweighing the facts. Id. Dearman contended that the record contained no evidence which suggested she was not disabled or that she was able to perform her duties as a teacher. Id. This Court noted that it was clear from the record that Dearman was unable to perform her usual duties of employment and no accommodation could remedy the situation. This Court in Dearman acknowledged that the record was devoid of any evidence that Dearman was not disabled, and PERS had failed to offer any medical evidence which disputed the opinions of the doctors who testified. Id. at 1018.
¶ 19. Comparing Dearman with the case at hand, the facts are similar. Employers and coworkers testified and acknowledged the physical debilitation and excruciating pain experienced by Knight. Knight’s coworkers and employer testified that she could not find medication that would relieve her pain, that she had fallen many times because of her lack of balance, and that she was in constant pain. Knight’s sister testified that when she had lived with Knight, she would awake to Knight’s screams. She would check on her, and Knight would be screaming in pain and holding her feet. Knight did not apply previously for disability, because she believed she should keep working. Her sister further testified that the surgery she had on her feet helped only with getting her foot in a shoe. It did not take any of the pain away. She had missed church because of the pain in her feet just one day prior to the PERS hearing. She had stopped going to lunch during work, because it hurt too much to leave the office. One of the senators stated that Knight once had been a very vibrant and energetic employee who never had refused to do anything but that she had become constantly in pain.
¶ 20. In Public Employees’ Retirement System v. Marquez, 774 So.2d 421, 427 (Miss.2000), PERS argued that “[if] the Board of Trustees were to accept subjective complaints with the same weight of determination as objective complaints, then anyone who wishes to be classified as disabled would need only complain that they cannot perform their regular work duties.” PERS argued that the possible evidence of disability was subjective in nature, rather than objective. Id. This Court recognized that, while some of Marquez’s medical problems had been treated, she still had medical problems which made her incapable of performing her job as a teacher. Id. The Court further stated, “if medical diagnoses by licensed physicians are to be labeled ‘subjective’ evidence of medical ailments, it is unclear what PERS would consider to be ‘objective’ evidence.” Id. This Court found that there was medical evidence in the record which suggested that Marquez was incapable of performing *918 her duties as a schoolteacher. Id. The Court noted that Marquez’s fibromyalgia had manifested itself as chronic pain. Id.
¶21. In the case at hand, Knight worked as a committee assistant for the Mississippi Senate. Her job required constant movement. Because Knight was always on her feet, the pain worsened and had manifested itself as chronic pain. Regardless of the cause of the pain, it had not subsided. Knight’s supervisor stated that she was a very good employee and did the best she could in spite of her chronic pain, which was worsening and making it difficult to work. Therefore, it is myopic for PERS to state that pain in and of itself is not disabling and rather, there must be a direct cause of the pain for it to be considered a disability.
¶ 22. While the dissent argues that the Court of Appeals was correct in finding that Knight did not present objective medical evidence of the cause of her pain, we disagree. Dr. Philip Blount, after being recommended by PERS, evaluated Knight. He found that her impairment was at a maximum medical improvement, that she should not have to walk long distances (which was required for her job), and that she was suitable only for sedentary work. Further, he found that she could have peripheral neuropathy, but he could not diagnose her with it since unmyelinated type C pain fibers are not detected on routine electrodiagnostic evaluations. He diagnosed her with bilateral metatarsalgia, an outside diagnosis of peripheral neuropa-thy without electrodiagnostic support; gait instability; and outside diagnosis of osteoporosis. Dr. Samuel Peeples, another doctor to whom PERS referred Knight, stated that Knight’s symptoms were “very suggestive of peripheral neuropathy.”
¶23. Mississippi Code Section 25-11-113(l)(a) contains two parts. First, the Medical Board, after medical examinations, must first certify that the applicant is “mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired[J” Miss.Code Ann. § 25-11-113(l)(a) (Supp. 2012). Second, the Medical Board must then apply the statutory definition of disability, which states:
the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] that is actually offered and is within the same general territorial work area, without material reduction in compensation.
Miss.Code Ann. § 25-ll-113(l)(a).
¶24. The dissent is correct in setting out that the “applicant must provide the Medical Board with sufficient ‘medical evidence’ to show that he or she is ‘mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired’ (Miss.Code Ann. § 25-11-113(a)) followed by the Medical Board then applying the definition of disability from that Section.” The dissent further addresses PERS Board Regulation 45A, Section 105, to support its argument that Knight must have objective medical evidence to support the disability claim.[2] *919 However, the dissent’s application of this statute to the facts at hand is simply incorrect. Dr. Blount stated in his medical report that Knight should have only a sedentary job, that she should not have to walk long distances (which was required for her job) and that she potentially had peripheral neuropathy. With Dr. Blount’s statements that Knight could not continue the tasks required of her job (walking long distances) and that she was at a maximum medical improvement, Knight presented enough medical evidence to show that she was physically incapacitated for the job she was employed to do, that it was likely permanent, and that she should be retired. A sedentary job was not within the guidelines of her employment.
¶ 25. Additionally, the dissent incorrectly mentions that we failed to addressed the PERS Board Regulation 45A, Section 105, which references Section 25-11-113. That regulation further discussed Section 25-11-113, which we thoroughly analyzed in this opinion.
¶ 26. Accordingly, Knight falls within this statutory definition of disability. Her job as a committee assistant required her to be constantly on her feet. Because of her chronic pain, Knight is unable to perform the usual duties of her employment. PERS suggested at the hearings that Knight’s failure to ask for a scooter or wheelchair was a failure to exhaust her options. Knight disagreed, testifying that the use of such device would not be possible for her specific job duties, because she was required to be on the move constantly. Such accommodations would inhibit her ability to work accurately because of the job requirements. Using a scooter or wheelchair would not be conducive to on-the-run job duties, nor would she be able te adequately complete tasks during the busy legislative sessions.
¶27. PERS’ suggestion that Knight should have asked for a scooter or wheelchair or should have been moved to a sedentary job is farfetched. In reiterating Mississippi Code Section § 25-11-113(l)(a), the statutory definition does not require a person with a potential disability move to a different field of work, nor does it require a person to lose compensation. A sedentary job would not be in the same line of work as what Knight was engaged in as a committee assistant — she worked nine- to fourteen-hour days during session, had to be on her feet most of the day, go up and down stairs, stand at a copy machine, and prepare for committee meetings.
II. Whether the Court of Appeals erred in relying on Laughlin v. Public Employees’ Retirement System.
¶28. We disagree with the Court of Appeals and the dissent here that the reliance on Laughlin was proper. In fact, the cases are very different. Laughlin was examined by Dr. David Collipp, a PERS recommendation. Laughlin v. Pub. Employees’ Ret. Sys., 11 So.3d 154, 155 (Miss.Ct.App.2009). Dr. Collipp’s physical examination showed that Laughlin had no abnormal pain behaviors or pain magnification. Id. at 155-156. He concluded that she had normal tone and motor power for her limbs, and normal range of motion (which included her shoulders, elbows, wrists, digits, hips, knees, and ankles). Id. He found that she had normal gross mental status with some passive-aggression and narcissistic personality traits. Id. He further found that she was capable of performing the work in her job description. *920 Id. Dr. Adams, a rheumatologist, did not indicate that she suffered any permanent partial impairments, nor did he indicate whether she had reached maximum medical improvement. Id. at 156.
¶ 29. Those facts differ from the situation at hand. Dr. Blount stated that Knight should not return to the work she was doing, because she could not walk long distances and was able to do only sedentary work. Because this is outside of the requirements of her employment as required by statute, Knight would not be capable of returning to work as Laughlin could. In fact, Laughlin’s doctor specifically stated that she was well enough to go back to work. Laughlin, 11 So.3d at 156. Further, Knight was diagnosed with bilateral metatarsalgia, which contributed in part to her pain. In contrast, Laughlin’s doctor concluded that she had no abnormal pain behaviors or pain magnification. Id.
¶ 30. The Court of Appeals stated:
Like the Laughlin case, each of Knight’s doctors either offered no opinion regarding Knight’s disability or determined Knight was not disabled. Not a single doctor concluded Knight was permanently incapacitated or incapable of returning to her employment as required under the statute. Although one doctor stated her symptoms were suggestive of peripheral neuropathy, which could suggest the possibility of disability, he ultimately concluded she was not disabled.
108 So.3d at 947 (emphasis in original).
The dissent relies on this in its argument but clears up the Court of Appeals’ language by stating that the “physicians did not make a finding in regard to disability.” We, however, disagree. As previously stated, this Court is to determine whether there is substantial evidence in the record to support PERS’ decision to deny Knight disability benefits. “Substantial evidence” has been defined by this Court as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Pub. Employees’ Ret. Sys. v. Dishmon, 17 So.3d 87, 91 (Miss.2009) (citing Pub. Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (Miss.2000)). Dr. Blount, in a PERS recommendation, stated that Knight would be capable of only sedentary work (which is a conclusion that she could not return to her employment under the statute) and should not be required to walk long distances. Moving Knight from a position of committee assistant to a sedentary job would not be within the duties of her employment. Second, no doctor concluded that Knight was not disabled. In fact, Dr. Peeples, in a PERS recommendation, stated that Knight’s symptoms were suggestive of disability. Although no doctor expressly stated that Knight is disabled, both doctors suggested it with the language they used. Both indicated that Knight likely had peripheral neuropathy, and Dr. Blount stated that she was at a medical maximum improvement. This Court, in Dearman, 846 So.2d at 1016 (quoting Davis v. Pub. Employees’ Ret. Sys., 750 So.2d 1225, 1233 (Miss.1999)), noted that “substantial evidence has been defined as evidence which affords a substantial basis of fact from which the fact in issue can be reasonably inferred.”
CONCLUSION
¶ 31. After a review of the record, this Court finds that Knight has met her burden, and that PERS’ decision to deny her disability claim was not supported by substantial evidence.
¶ 32. The judgment of the Court of Appeals is reversed. The judgment of the Hinds County Circuit Court is reversed and rendered.
*921 ¶ 33. THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED.
WALLER, C.J., KITCHENS, CHANDLER AND KING, JJ., CONCUR. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P. J., RANDOLPH AND LAMAR, JJ.

. The inclusion of her medical history is important, because all of these factors together have created her disability. They have pro *917 hibited her from performing her usual and customary employment duties.

. PERS Board Regulation 45A, Section 105, provides:
3. For purpose of 25-11-113, medical evidence shall be defined as “objective medical evidence’ which means: reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that are observed and documented by medical professionals
*919 4. The applicant is responsible for providing sufficient objective medical documéntation to the Medical Board in support of his or her claim for disability.