# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CT-02184-SCT

*BETTY THOMAS*

*v.*

*PUBLIC EMPLOYEES' RETIREMENT SYSTEM*
*OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2005 |
| TRIAL JUDGE: | HON. BOBBY BURT DELAUGHTER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | MARY MARGARET BOWERS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED.  THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REINSTATED AND AFFIRMED - 10/02/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    Betty Thomas, a former employee of the Mississippi Department of Human Services,
applied for disability retirement benefits, and this request was denied by the Public
Employees' Retirement System of Mississippi's (PERS) Board of Trustees. The Circuit
Court for the First Judicial District of Hinds County found that the decision of PERS was
supported by substantial evidence and affirmed the decision. Thomas appealed the decision

of the circuit court, and this appeal was referred to the Court of Appeals. The Court of Appeals held that the record did not contain sufficient evidence to support PERS' denial of benefits. This Court granted PERS' Petition for Writ of Certiorari pursuant to Mississippi Rule of Appellate Procedure 17(a). Finding that the Court of Appeals correctly articulated the standard of review for a decision from an administrative agency, but did not adhere to this standard in rendering its decision, we reverse the decision of the Court of Appeals and reinstate the decision of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2.     Thomas was employed by the Mississippi Department of Human Services as a child support enforcement officer for nine and three-quarter years. Her physical activities at work consisted of a sedentary desk job which required some standing and pushing and pulling of files. At the time she made application for non-duty related disability retirement benefits, Thomas was forty-nine years old.

¶3.     The medical documentation, which was submitted to the Disability Appeals Committee of the PERS Board of Trustees ("Appeals Committee"), revealed that Thomas was seen by a number of doctors subsequent to an unrelated neck surgery in February of 2001. In October of 2001, Dr. Fred Sandifer saw Thomas for chronic back and hip pain. Dr. Sandifer stated the source of this pain was unclear, and his records indicate that he was unable to palpate the knots of which Thomas complained.

¶4.     In January of 2002, Thomas was referred by her primary care physician to rheumatologist Dr. James Hensarling, who concluded Thomas had fibromyalgia. Dr. Hensarling stated Thomas had also developed secondary depression and recommended

2

Thomas see a psychiatrist. Dr. Hensarling did not place Thomas on any restrictions and made no long-term recommendations regarding disability or inactivity other than a three-month leave of absence, which clearly does not qualify Thomas for long-term disability.

¶5.     Dr. Hensarling referred Thomas to a psychiatrist, Dr. Melvyn Levitch. Dr. Levitch found that Thomas was suffering from "major depression secondary to medical issues." The Committee on Disability Appeals found that Thomas did not use the psychiatry treatment to its maximum benefit, as she saw Dr. Levitch only seven times over two years, and in these visits, Thomas routinely complained of sinus problems which were unrelated to her disability claims.

¶6.     "In April of 2002, the Social Security Administration notified Thomas that she was entitled to federal disability benefits" after becoming disabled (pursuant to their rules) on February 26, 2002. *Thomas v. Pub. Employees Ret. Sys.,* 2007 Miss. App. LEXIS 435, \*4 (June 26, 2007). On May 21, 2002, a Mississippi Department of Human Services disability coordinator, Wilhemina McCullough, executed an Employer's Certification of Job Requirements which stated, "No accommodations [have] been offered as employee is unable to perform the essential functions of her job. As a result, she appears unable to come to the workplace and perform any duties at this time."

¶7.     In November of 2002, at the request of PERS, Thomas underwent a Functional Capacity Exam ("FCE"). The FCE revealed that Thomas "is capable of performing at the sedentary to light level of work with some limitations. The patient would need to be given occasional rest breaks and alternate sitting and standing."

¶8.     On February 6, 2003, Thomas's claim for disability benefits was denied. Thomas received a letter from the executive director of PERS, stating:

> After careful examination of your Application for Disability Retirement by the Public Employees' Retirement System Medical Board, it has been determined that there was insufficient objective evidence to support the claim that your medical condition prevents you from performing your duties as described of a DHS-Child Support Enforcement Officer.

¶9.     On March 3, 2003, Thomas's primary care physician, Dr. Rushing, completed an Attending Physician's Statement for Thomas's private disability insurance company. Dr. Rushing's diagnosis indicated Thomas had fibromyalgia. Dr. Rushing stated Thomas "cannot perform work of any kind" and as to the estimated date of return to work, Dr. Rushing indicated "no return expected."

¶10.    On March 6, Thomas appealed the ruling of the Appeals Committee, and a hearing was held on March 28, 2003. The hearing was presided over by a hearing officer, along with two doctors. The transcript of this hearing reveals that all medical records, the results of the FCE and notification of the Social Security award were submitted to the Appeals Committee. The Appeals Committee also heard testimony from Thomas, Thomas's husband and a close friend of Thomas.

¶11.    Thomas testified she felt that she had to stop working because she "couldn't cope with it anymore" and that she was suffering from pain and fatigue. Thomas's husband and friend testified they had noticed a change in her health and that she was not herself.

¶12.    Subsequent to the hearing, the Appeals Committee issued its Proposed Statement of Facts, Conclusions of Law and Recommendations, and found that there was no objective medical evidence to show Thomas was permanently disabled pursuant to Mississippi Code

4

Annotated Sections 25-11-113 and 25-11-114. Therefore Thomas's request for benefits was denied. After reviewing the record of the proceedings before the Appeals Committee, the PERS Board of Trustees approved and adopted the recommendation of the Appeals Committee as its order.

¶13.     Thomas appealed this decision to the Hinds County Circuit Court for the First Judicial District, and that court affirmed the order of the PERS Board, holding "[t]he decision of the Board of Trustees was supported by substantial evidence on the record and was neither arbitrary [n]or capricious." Thomas appealed the decision of the circuit court, and her appeal was referred to the Court of Appeals, which found PERS had not presented substantial evidence to support its decision, and reversed the decision of the circuit court.

¶14.     PERS applied for writ of certiorari to this Court, which was granted. The issue PERS presents is whether the Court of Appeals erred when it found that the decision of the PERS Board of Trustees was not supported by substantial evidence.

**ANALYSIS**

> A court faced with the review of a decision of an administrative agency is very limited as to the scope and depth of its inquiry. Rule 5.03 of the Uniform Circuit and County Court Rules provides that the reviewing court will entertain an appeal only to determine if the order or judgment of the lower authority was: 1) supported by substantial evidence; 2) arbitrary or capricious; 3) beyond the power of the lower authority to make; or 4) violated some statutory or constitutional right of the complaining party.

***Pub. Employees Ret. Sys. v. Dishmon***, 797 So. 2d 888, 891 (Miss. 2001); *see also **Fulce v. Pub. Employees Ret. Sys.***, 759 So. 2d 401, 404 (Miss. 2000); ***Davis v. Pub. Employees. Ret. Sys.***, 750 So. 2d 1225, 1229 (Miss. 1999); ***Brinston v. Pub. Employees Ret. Sys.***, 706 So. 2d 258, 259 (Miss. Ct. App. 1998).

¶15. During the hearing on this matter, the Appeals Committee was presented with and considered Thomas's medical evidence. The Appeals Committee did not disagree that Thomas suffered from fibromyalgia. However, the Appeals Committee found that fibromyalgia is treated with psychiatric care and exercise and it had been shown that Thomas was non-compliant with both. After thorough review of the medical records, the Appeals Committee further concluded Thomas had discontinued psychiatric help, that she had found no orthopedic explanation for her complaints of pain, that her complaints of "knots" were unable to be verified by medical providers, that she had complaints of numbness for which no objective explanation could be found, that she had joint pain without trauma, and with the exception of one test, she had all normal rheumatology testing.

¶16. The only medical testimony which was contrary was that of Thomas's primary physician, who stated she "could not perform work of any kind." However, in his records regarding Thomas's condition, Dr. Rushing listed no objective findings that Thomas was unable to perform her job. Dr. Rushing never offered any basis for his opinion, as he referred her to specialists who found no objective basis for Thomas's complaints.

¶17. Faced with conflicting medical evidence, the Appeals Committee issued a thorough and exhaustive Findings of Fact, Conclusions of Law and Recommendations in which they outlined their findings, and the circuit court affirmed same. In its opinion, the Appeals Committee outlined the testimony they heard, along with details of the medical treatment Thomas had received. The Appeals Committee stated it was Thomas's burden to provide them with objective medical proof that a disability exists. "When there is substantial credible evidence to support the Board's decision, neither the circuit court nor this Court may

6

interfere. *Smith v. Jackson Const.,* 607 So. 2d 1119, 1124 (Miss. 1992). The Appeals

Committee found, *inter alia*:

> Our hearts go out to Ms. Thomas. We can tell she is not at her best. But Ms. Thomas has not persuaded us that she is disabled. There is no objective medical condition to explain her complaints. Fibromyalgia, if that is what Ms. Thomas has, is treated with exercise and psychiatric therapy and is not a disability in and of itself. We do hope that Ms. Thomas will maximize her medical treatment so that she can hopefully get back to her old self. But because there is no objective medical evidence that Ms. Thomas is permanently disabled, we recommend that her request for disability be denied.

¶18.    In its opinion, the Appeals Committee further found,

> The only doctor stating that Ms. Thomas is disabled is Dr. Rushing, her primary doctor. Yet, even Dr. Rushing has no objective proof in his records that Ms. Thomas is no longer able to perform her job. . . . Based upon the fact that Ms. Thomas brought him forms to complete, as he stated in his records, it appears to us that he was merely functioning as an advocate for his patient when he completed disability forms, and he is probably not aware of the need for objective medical proof as is required in this forum.

¶19.    The Court of Appeals previously addressed substantial evidence in *Public Employees Retirement System v. Cobb,*

> [t]he requirement of 'substantial evidence' seems satisfied, however, in such instance by an appellate determination that the agency's conclusion that the claimant's evidence was so lacking or so unpersuasive that she failed to meet her burden appears a reasoned and unbiased evaluation of the evidence in the record. In that circumstance, in something of a paradox, the lack of evidence at the agency level becomes the substantial evidence on appellate review that suggests the necessity of affirming the agency's determination.

*Pub. Employees Ret. Sys. v. Cobb*, 839 So. 2d 605, 609-10 (Miss. Ct. App. 2003).

¶20.    On appeal, we must determine whether there was substantial credible evidence to

support the Appeals Board's decision or whether the circuit court legally erred, not whether

we might reach a different conclusion had we been sitting on the Appeals Committee. The

7

Court of Appeals opinion reweighs the evidence, using such wording as the "Committee *purportedly* relied upon Thomas's medical records" and "PERS *merely* makes the *vague* statement that there is a 'lack of objective medical evidence to substantiate Thomas's disability claim." ***Thomas,*** 2007 Miss. App. LEXIS 435 at *11, *13. The record reveals no reasonable basis to question the Appeals Board's reliance on the medical records and testimony submitted. "There is a rebuttable presumption in favor of a PERS ruling. . . . Neither this Court nor the circuit court is entitled to substitute its own judgment for that of PERS, and it is impermissible for a reviewing court to re-weigh the facts of the case." ***Pub. Employees Ret. Syst. v. Dishmon,*** 797 So. 2d 888, 891 (Miss. 2001) (citations omitted).

¶21.    The purpose of the Appeals Committee is to evaluate proof, not offer evidence. In ***Dishmon,*** this Court held, "[t]he question here is not whether there was evidence in support of Dishmon's disability, but whether there was substantial evidence to support the finding of the administrative agency. The standard of review limits this Court to reviewing the lower court's decision to determine whether the record can support this finding. . . ." ***Id.*** at 892.

¶22.    There is no evidence in the record that the Appeals Committee ignored or received and rejected evidence in its duties as factfinder. There is substantial credible evidence which supports its findings. In the case sub judice, a hearing officer, the PERS Committee, the Disability Appeals Committee and a circuit judge all concluded there were substantial facts in the record to support their findings. These findings, when supported by such substantial evidence, should be accepted, as "[t]he existence within government of discrete areas of quasi-legislative, quasi-executive, quasi-judicial regulatory activity in need of expertise is the raison d'etre of the administrative agency. Because of their expertise and the faith we vest

8

in it, we limit our scope of judicial review." *Miss. Transp. Comm'n v. Anson*, 879 So. 2d 958, 962-963 (Miss. 2004) (internal citation omitted).

¶23.    Finding that the Court of Appeals misapprehended the burden of proof for an agency decision, we reverse the finding of the Court of Appeals and reinstate and affirm the decision of the circuit court.

¶24.    **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REINSTATED AND AFFIRMED.**

      **SMITH, C.J., CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY AND GRAVES, JJ. WALLER, P.J., NOT PARTICIPATING.**


      **DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶25.    "A court faced with the review of a decision of an administrative agency is very limited as to the scope and depth of its inquiry." *Pub. Employees' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (Miss. 2001). And although agency decisions are afforded a rebuttable presumption of correctness, *Pub. Employees' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2000), this Court will not rubber-stamp a holding simply because it emanates from an agency rather than a court. *Pub. Employees' Ret. Sys. v. Dearman*, 846 So. 2d 1014 (Miss. 2003).

¶26.    This Court grants an appeal from an administrative agency only when the decision "(1.) [w]as [un]supported by substantial evidence; or (2.) [w]as arbitrary or capricious; or (3.) [w]as beyond the power of the lower authority to make; or (4.) [v]iolated some statutory or constitutional right of the complaining party." Miss. Unif. Cir. & Cty. R. 5.03. These first

9

two prongs are closely related; "[i]f an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." ***Pub. Employees' Ret. Sys. v. Marquez***, 774 So. 2d 421, 430 (Miss. 2000). However, this determination may not be reached by a Court that "substitute[s] its own judgment for that of the agency which rendered the decision [or] reweigh[s] the facts of the case." ***Id.*** Instead, "the primary issue before this Court is . . . whether there is substantial evidence to support PERS's finding [Thomas] was not disabled." ***Thomas v. Pub. Employees' Ret. Sys.***, 2007 Miss. App. LEXIS 435, *4 (Miss. Ct. App. June 26, 2007). "Substantial evidence has been defined as that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred." ***Dishmon***, 797 So. 2d at 892, and "means something more than a 'mere scintilla' or suspicion." ***Marquez***, 774 So. 2d at 425 (quoting ***Miss. Real Estate Comm'n v. Anding***, 732 So. 2d 192, 196 (Miss. 1999)).

¶27.  In other words, when this Court analyzes an agency decision for reversible error, the scales upon which the agency weighed its evidence may only be glanced over. This Court may not re-weigh the evidence, nor may it question the agency's conclusions by checking the scales to determine whether they were properly calibrated. This Court may only look at the two sides of the scale, and if the side for which the agency ruled holds *any* substantial evidence at all – even evidence that appears to be outweighed by the evidence on the other side of the scale – then his Court is duty-bound to uphold the agency's decision.

¶28.  Thomas argues that the evidence that she presented to PERS, recounted in great detail in her brief, is more than enough substantial evidence to support her position. Although persuasive, this argument is, ultimately, irrelevant. Neither the persuasive value nor the

substantiality of the evidence presented by Thomas is the subject of this Court's inquiry. "The question here is not whether there was evidence in support of [Thomas'] disability, but whether there was substantial evidence to support the finding of the administrative agency." *Dishmon*, 797 So. 2d at 892.

¶29.    But the Court of Appeals correctly determined that PERS' decision to deny benefits to Thomas fails to hop over even this minuscule hurdle. PERS presented no evidence, substantial or otherwise, to contest the evidence presented by Thomas in support of her claim. This mere "disagree[ment] with the opinion" of Thomas' doctors, *Thomas*, 2007 Miss. App. LEXIS 435 at *16, is no evidence at all and is precisely the sort of arbitrary and capricious exercise in decision making against which Rule 5.03 commands appellate courts to stand guard. Miss. Unif. Cir. & Cty. R. 5.03(2). Even the brief submitted to this Court by PERS recounts no evidence supporting the conclusion that Thomas is not disabled. The only possible exception is the Committee's reference to the series of MRI scans that produced mixed results. At best, this evidence is inconclusive and does not "provide[ ] an adequate basis of fact from which the fact in issue can be reasonably inferred."*Dishmon*, 797 So. 2d at 892. Likewise, the results of Thomas' FCE did not discount her diagnosis of fibromyalgia and speculated that, at best, her return to work would be contingent upon a handful of special accommodations. Again, this is, at best, inconclusive evidence. If these results constitute a "mere scintilla or suspicion"at all, *Marquez*, 774 So. 2d at 425, then they do not support but rather undercut PERS' conclusion.

¶30.    The majority opinion's conclusion is equally devoid of any reference to evidence supporting PERS' decision, substantial or otherwise. Despite its claim that "[t]here is

substantial credible evidence which supports [PERS'] findings," Maj. Op. at ¶ 22, the majority makes no effort to detail that evidence. Instead, the majority adopts the Court of Appeals' reasoning in *Public Employees' Retirement System v. Cobb*, 839 So. 2d 605 (Miss. Ct. App. 2003), in which that court held that "[t]he requirement of substantial evidence seems satisfied . . . by an appellate determination that the agency's conclusion that the claimant's evidence was so lacking or so unpersuasive that she failed to meet her burden appears a reasoned and unbiased evaluation of the evidence in the record." *Id.* at 609-10. The majority argues that whatever shortcomings exist in Thomas' evidence – for example, her failure to pursue psychiatric treatment – ought to, in and of themselves, be considered evidence in support of the agency's decision. This analysis flips this Court's standard of review onto its head. By the majority's reasoning, this Court should ignore the fact that one side of the evidentiary scales is indisputably devoid of substantial evidence in this case. But the majority takes this astonishing position a step farther by arguing that this Court should hold that, under circumstances such as those presented by the immediate case, an utter lack of evidence can outweigh imperfect evidence – in other words, that nothing weighs more than something. Ink need not be spilled to fully illustrate the fallacy of this notion

¶31.     Even the Court of Appeals, whence the majority derives this analysis, has been quick to narrow the *Cobb* rule. In *Stevison v. Public Employees' Retirement System*, 966 So. 2d 874 (Miss. Ct. App. 2007), the Court of Appeals described *Cobb* as a case in which the claimant lacked "an actual medical condition" and held its application inappropriate when a record "contains uncontradicted medical diagnoses . . . ." *Id.* at 880. Even if the *Cobb* rule did not defy logic – and it most certainly does – then its application is plainly inappropriate

in this case, in which both Thomas' diagnosis of fibromyalgia and her evidence thereof have been uncontested.

¶32.    But even if the majority ignores both these facts, its urge to adopt the ***Cobb*** standard should be resisted for the important reason that it flies in the face of this Court's long line of cases regarding deference toward agency decisions. By nitpicking Thomas' evidence – all the while ignoring the utter lack of evidence presented by PERS – the majority engages in precisely the sort of evidentiary reinspection that is strictly forbidden during this Court's consideration of agency decisions. *See **Marquez***, 774 So. 2d at 430.

¶33.    The Court's review of the evidentiary scales in administrative agency decisions is limited to a mere glance at the scales. The majority's deeper attention to the quality of the evidence itself reweighs the evidence that has been placed on the scales and, ultimately, presses this Court's thumb upon PERS' side thereof. The clearly defined limits of review imposed by Rule 5.03, the utter lack of substantial evidence supporting PERS' decision, the illogical underpinnings of the rule of ***Cobb***, and this Court's adherence to the notion of *stare decisis* all command a contrary outcome.

¶34.    Therefore, I dissent.

**EASLEY AND GRAVES, JJ., JOIN THIS OPINION.**