# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-SA-01362-COA

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM**  **APPELLANT**

**v.**

**KRISTIE JAMES**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/18/2015 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL BY: JANE L. MAPP |
| ATTORNEY FOR APPELLEE: | GEORGE S. LUTER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | REVERSED DECISION BY BOARD OF TRUSTEES AND AWARDED DISABILITY BENEFITS |
| DISPOSITION: | AFFIRMED - 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., JAMES AND GREENLEE, JJ.**

**LEE, C.J., FOR THE COURT:**

¶1.     The Board of Trustees (the Board) of the Public Employees' Retirement System (PERS) denied Kristie James's request for non-duty-related disability benefits. The Hinds County Circuit Court, First Judicial District, reversed the Board's decision and awarded James disability benefits. PERS now appeals, asserting that the circuit court erred in awarding James disability benefits.

## PROCEDURAL HISTORY

¶2. Citing chronic back pain, James applied for disability benefits in December 2008. At the time of her disability hearing in 2009, James was a seventh-grade teacher at Caledonia Middle School in Lowndes County, Mississippi. James had been employed by the local school district for approximately fourteen years.

¶3. The PERS Medical Board reviewed James's application and denied her disability benefits. James then appealed to the Disability Appeals Committee (DAC), which granted her a hearing. The DAC recommended to deny James disability benefits, and the Board adopted the DAC's recommendation. As previously stated, the circuit court reversed the Board's decision and awarded James disability benefits.

**FACTS**

¶4. James testified that she began experiencing back pain in 2007. James first consulted a chiropractor, but her pain was not alleviated. James then saw Dr. Timothy Bassett, who diagnosed her with a minimal disc bulge and a small annular tear in her L5-S1 region. According to James, Dr. Bassett recommended three months of physical therapy. Finding physical therapy unhelpful, James then saw Dr. Tom McReynolds twice for joint injections due to low-back pain, lumbar bulging disc, lumbar facet arthropathy, and lumbar spondylosis.

¶5. In March 2008, James had back surgery (a spinal fusion) to alleviate her pain. James testified this surgery provided relief for about three months. Dr. Patrick Curlee had performed the surgery and continued to see James for follow-up appointments. Dr. Curlee's clinic notes from September 15, 2008, stated that James could "return to normal daily activities, including work, with some limitations. No standing duties at work. The patient

2

should be able to return to work immediately." Dr. Curlee also prescribed James pain medication. Dr. Curlee's clinic notes from January 8, 2009, diagnosed James with an "incomplete boney fusion at L5-S1 both post-laterally and in the intervertebral space." He recommended that James try an external bone stimulator to alleviate her pain.

¶6. The last clinic notes in the record are dated September 10, 2009. In these notes, Dr. Curlee stated that "secondary to her back pain, [James] is unable to perform all of the necessary duties of her job." Dr. Curlee diagnosed James with "Lumbar Pseudarthrosis L5-S1," which resulted from the failed spinal-fusion surgery. Dr. Curlee also noted James's long-term narcotic usage, but stated James was "taking a very reasonable amount of narcotics given her diagnosis. She has proven very responsible with her medication usage over the last couple of years."

¶7. Dr. Curlee completed a PERS Form 7 on January 8, 2009, indicating that due to James's back pain, she was unable to "bend, twist, stoop, climb or crawl. [She] also cannot stand for extended periods of time." Dr. Curlee listed her restrictions as "no prolonged standing or heavy lifting." Under "prognosis for recovery," Dr. Curlee wrote "poor." And he assigned James a permanent partial impairment rating of "twenty-three percent whole person" and "thirty percent lumbar spine."

¶8. James was sent to Dr. Laura Gray for an independent medical examination (IME) on April 14, 2009. After reviewing James's medical records and conducting an examination, Dr. Gray concluded that James had "no specific clinical indication [that] would prevent her from returning to work." Dr. Gray noted that James "appear[ed] to be over-using narcotic

3

medications" and "would be better served to be on a lower dose of narcotic[s] with focus on physical activity." Dr. Gray reported James's range of motion was within normal limits for all areas except for her back. Due to this, Dr. Gray recommended that James "should return back to her usual and customary duty with limitation in lumbar flexion." Although Dr. Gray noted she reviewed all of James's medical records, including those from Dr. Curlee where he did impose restrictions, Dr. Gray stated "the patient has no restrictions noted."

¶9.     James testified that her work day began at 7:00 a.m. and lasted until 3:30 p.m. at the earliest. Her work day consisted of frequent standing, walking, and bending, with the occasional lifting of boxes or books. She stated she could not stand for long periods of time—thirty minutes maximum—and could not lift heavy items. James stated her pain level was typically an eight on a scale of one to ten, but a ten at the end of a work day. At the time of the hearing, James had prescriptions for a pain patch and hydrocodone. She testified that she took the hydrocodone two to three times per week and changed the pain patch every three days and that the pain medication did not eliminate her pain; it only took "the edge off."

¶10.    Karen Pittman, the principal at the school, completed a PERS Form 6B, noting that James had difficulty performing her duties due to her constant pain and that consistent attendance was required. Pittman listed James's duties as "standing, walking, sitting, bending, reaching, stooping, and pushing." Pittman indicated that James could not perform her job. At the hearing, Pittman testified that James was an excellent teacher, and James's contract was renewed despite her physical limitations.

**STANDARD OF REVIEW**

4

¶11. The standard of review of actions by administrative agencies is well established. It is the duty of the reviewing court to ascertain whether the Board's decision (1) was supported by substantial evidence; (2) was arbitrary or capricious; (3) was beyond the power of the agency to make; or (4) violated some statutory or constitutional right of the complaining party. *Pub. Emps. Ret. Sys. v. Dearman*, 846 So. 2d 1014, 1018 (¶13) (Miss. 2003); *Pub. Emps. Ret. Sys. v. Dishmon*, 797 So. 2d 888, 891 (¶8) (Miss. 2001). The applicant for disability income bears the burden of proving that she is actually disabled. *Dishmon*, 797 So. 2d at 893 (¶15). There is a rebuttable presumption in favor of a PERS ruling. *Brinston v. Pub. Emps. Ret. Sys.*, 706 So. 2d 258, 261 (¶6) (Miss. Ct. App. 1998).

## DISCUSSION

¶12. In its only issue on appeal, PERS claims its decision is supported by substantial evidence. Mississippi Code Annotated section 25-11-113(1)(a) (Rev. 2010) defines "disability" as

> the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] that is actually offered and is within the same general territorial work area, without material reduction in compensation.

In denying James's request for disability benefits, the Board found the following:

> This Committee finds James's testimony very credible. After hearing her testimony and looking at the records, this Committee agrees that James has what the medical community calls "failed back syndrome." That terminology simply means that James had surgery to alleviate back pain but even after the surgery, she has back pain. As noted by both Dr. Curlee and Dr. Gray, James's back exam is basically normal. There is nothing pathologic in her back. The Committee believes James has muscular back pain[,] and she has been stable

5

since her back surgery. We note that Dr. Curlee has written that James has numerous limitations, but those are not based on structural problems. Those problems with the discs have been repaired as evidenced by the MRI. There is no evidence of sciatic pain[,] and all muscle groups are equal in strength and reflex. The limitations written by Dr. Curlee are based on James's complaints of pain. Pain without physical limitations cannot justify the recommendation of disability. And clearly, James is working[,] albeit she says she is in pain. This Committee cannot recommend disability based on the evidence before us today. There are other modalities that may relieve some of James's muscular back pain if she wishes to pursue them.

¶13. A similar situation occurred in *Knight v. Public Employees' Retirement System*, 108 So. 3d 912, 920 (¶31) (Miss. 2012), where the Mississippi Supreme Court determined that PERS's denial of disability benefits was unsupported by substantial evidence. Knight worked as a committee assistant for the Mississippi Senate, and her job required her to be on her feet constantly. *Id*. at 918 (¶21). PERS claimed that Knight had failed to produce "persuasive and credible objective medical evidence of a disability." *Id*. at 916 (¶16). Thus, PERS denied her benefits, finding that "[t]here is no statutory provision wherein an award of disability can be granted for pain when no objective reason for that pain can be produced." *Id*. However, the supreme court determined that there was evidence that Knight was disabled—the determination was not based solely on subjective evidence as PERS had concluded. *Id*. at 920 (¶31). One of Knight's doctors indicated she could only do sedentary work, which the supreme court noted "is a conclusion that she could not return to her employment under the statute." *Id*. Furthermore, no doctor concluded that Knight was not disabled, and one doctor indicated she was at maximum medical improvement (MMI). *Id*.

¶14. The Board cites to *Laughlin v. Public Employees' Retirement System*, 11 So. 3d 154 (Miss. Ct. App. 2009), for support. However, one of Laughlin's treating physicians did not

6

indicate that she suffered from any permanent partial impairments (PPI); had reached MMI; or would be subject to any job restrictions. *Id*. at 156 (¶8). Another treating physician indicated Laughlin had reached MMI, but did not find that she suffered from any PPI. *Id.* And this physician, along with a third physician, noted Laughlin would most likely make a full recovery. *Id*. at 157 (¶8). The physician who performed an IME stated that Laughlin "had no abnormal pain behaviors or pain magnification." *Id*. at 155-56 (¶5).

¶15.    In this instance, we find the Board's decision was not supported by substantial evidence. James produced sufficient evidence of her disability in order to rebut the presumption. James's job duties included "standing, walking, sitting, bending, reaching, stooping, and pushing." And Pittman indicated that James could not perform her job duties. Although Dr. Gray noted no restrictions in James's medical records, Dr. Curlee clearly indicated James had a poor prognosis for recovery and had numerous restrictions. Dr. Curlee also assigned her a PPI rating of "twenty-three percent whole person" and "thirty percent lumbar spine." Thus, there was objective medical evidence of James's impairment. This issue is without merit.

¶16.    **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., NOT PARTICIPATING.**