# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-01207-COA

**LAURIE STAKELUM** <span style="float:right">**APPELLANT**</span>

**v.**

**PUBLIC EMPLOYEES' RETIREMENT SYSTEM** <span style="float:right">**APPELLEE**</span>
**OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/26/2018 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | GEORGE S. LUTER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SAMUEL MARTIN MILLETTE III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 11/12/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. Laurie Stakelum suffered from medical conditions that caused her chronic pain. She applied for disability retirement benefits from the Public Employees' Retirement System (PERS). The agency denied her claim, and she appeals, arguing that the decision was not supported by substantial evidence and was arbitrary and capricious. For the reasons below, we affirm.

## STATEMENT OF FACTS

¶2. Stakelum was employed as a senior enforcement officer for the Mississippi Department of Transportation. In her capacity as senior enforcement officer, she performed

various work duties such as inspecting trucks, conducting federal inspections, lifting and carrying scales, and assisting local law enforcement. She was required to wear a duty belt around her waist and stand for hours at a time. Her inspection duties occasionally required her to crawl in and under trucks and unload cargo. In assisting local law enforcement, she was sometimes required to use her firearm or pursue suspects on foot.

¶3. Stakelum experienced severe pain on the job, causing her to have trouble working. She was diagnosed with fibromyalgia and osteoarthritis and sought treatment for back, joint, abdominal, and muscle pain, as well as headaches, eye and vision problems, and swelling. She experienced the most pain in her back. She missed some work during 2011 and 2012 due to fibromyalgia and all of June and July 2013 due to back pain and headaches. In 2011, an MRI of her lumbar spine revealed degenerative disc disease causing mild nerve damage.

¶4. Stakelum saw neurologist Dr. Diane Ross for numbness and tingling, back pain, headaches, and tremors. Dr. Ross conducted a number of physical exams, finding only minor problems. She ordered an MRI of the brain, which revealed no findings. In 2013, an MRI showed that the degenerative disc disease in Stakelum's lumbar spine was no longer causing nerve damage and that there was mild disc disease in the cervical spine.

¶5. Dr. Ross completed a PERS Form 7 and a Family and Medical Leave Act (FMLA) form. On the PERS Form 7, the doctor listed Stakelum's restrictions as "unable [to perform] prolonged standing, lifting, [or] bending." Dr. Ross stated that Stakelum was not at maximum medical improvement (MMI) and that it was "unknown" when she would be. The doctor initially listed Stakelum's permanent partial impairments as "unknown," but she

2

subsequently wrote fibromyalgia, cervical and lumbar stenosis, and headaches. On the FMLA form, Dr. Ross provided the same restrictions. She also stated Stakelum would be incapacitated for a single continuous period of time, and her conditions would cause flare-ups about two to three times a month, during which she would not be able to perform her job and would need time off.

¶6. Dr. Victor Bazzone, a neurosurgeon, examined Stakelum. He noted tenderness and a decreased range of motion in her neck, tenderness in her hips, and tenderness in her back, but no muscle spasms. Dr. Bazzone prescribed Aleve for her pain. Dr. Bazzone completed a PERS Form 7, listing her prognosis as "improvement expected." He assigned no work restrictions.

¶7. Dr. Thomas Francavilla, a neurosurgeon, examined Stakelum and also compared her 2011 and 2013 MRI results. He found that the degenerative disc in her lumbar spine was no longer causing nerve damage and that the condition of the cervical spine was "quite mild." The doctor believed the condition of the lumbar spine was not a "surgical situation." He also stated that surgery on the cervical spine would be unsuccessful due to Stakelum's fibromyalgia.

¶8. PERS referred Stakelum to independent practitioner Dr. Angel Mister for a PERS disability exam. Dr. Mister referred her to physical therapist Douglas Roll for a functional capacity evaluation (FCE) to determine if she was permanently disabled. The therapist described Stakelum's behavior during the FCE as self-limiting and self-restricting. For instance, Stakelum stopped several times during the FCE because she said she was in so

much pain. But Roll noted that Stakelum did not exhibit an increase in heart rate, respiration, or perspiration—all signs typically seen in someone cooperating or putting forth effort. Stakelum scored 96/100 on a pain questionnaire, indicating she was either "bedridden or exhibiting over-reactive and symptom magnifying behaviors." While he could not accurately determine if Stakelum could perform her job duties, he believed "with reasonable medical probability that" she could perform such duties if she "focus[ed] less on her pain and more on her abilities and capabilities."

¶9.     Stakelum officially resigned in October 2013 when she injured the second finger on her left hand during routine gun firing. Her finger had a contusion, small lacerations, decreased sensation, tenderness, and swelling. She was prescribed neuropathic cream and pain medications. Stakelum regained good strength and range in the finger, but her pain progressed from occasionally moderate to severe. Dr. Jim Thriffiley, who treated Stakelum's finger injury, provided on a workers' compensation evaluation and PERS Form 7 that her restrictions were no shooting and no lifting over five pounds with her left hand. He also stated that her prognosis for recovery was "poor" and that she had reached MMI, with a permanent-partial-impairment rating of one percent for her left second finger and zero percent for her whole person. Stakelum testified that she is right-handed.

**PROCEDURAL HISTORY**

¶10.    Stakelum applied for non-duty-related benefits. The PERS Medical Board denied her request, and she appealed to the PERS Disability Appeals Committee, which recommended the PERS Board of Trustees deny her claim. The Board agreed and denied her request for

4

benefits. She appealed PERS's decision to the Circuit Court of the First Judicial District of Hinds County, which affirmed.

## STANDARD OF REVIEW

¶11.    A court reviewing an appeal of an administrative decision entertains the appeal only to determine "if the order or judgment of the lower authority was: 1) supported by substantial evidence; 2) arbitrary or capricious; 3) beyond the power of the lower authority to make; or 4) violated some statutory or constitutional right of the complaining party." *Thomas v. Pub. Emps.' Ret. Sys.*, 995 So. 2d 115, 118 (¶14) (Miss. 2008); *see also* UCRCCC 5.03. This Court "is not entitled to substitute its own [judgment] for that of PERS, and it is impermissible for a reviewing court to reweigh the facts of the case." *Knight v. Pub. Emps.' Ret. Sys.*, 108 So. 3d 912, 915 (¶12) (Miss. 2012). Likewise, "[a] rebuttable presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency's action." *Id*.

## DISCUSSION

¶12.    The central focus of this appeal is whether PERS's decision was supported by substantial evidence and was not arbitrary or capricious.

¶13.    Disability retirement benefits are available to active PERS members when the member has achieved four years of service credit and the medical board "certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired . . . ." Miss. Code Ann.

§ 25-11-113(1)(a) (Rev. 2018).[1] Disability is "the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by [PERS] . . . that is actually offered and is within the same general territorial work area, without material reduction in compensation . . . ." *Id.*

¶14. Applicants for PERS disability retirement benefits must provide sufficient objective medical evidence in support of their claim. Miss. Code Ann. § 25-11-113(1)(b) (Rev. 2018).[2] Objective medical evidence includes "reports of examinations or treatments; medical signs that are anatomical, physiological, or psychological abnormalities that are observed and documented by medical professionals; . . . or laboratory findings that are anatomical, physiological, or psychological phenomena that are shown by medically acceptable laboratory diagnostic techniques . . . ." *Id.*

¶15. The test for whether a PERS decision is supported by substantial evidence and neither

---

[1] Depending upon the applicant's hire date, they must have four or eight years of service credit to be eligible for disability retirement benefits. Miss. Code Ann. § 25-11-113(1)(a) (Rev. 2018) (The 2011 and 2016 amendments to this statutory provisions, which appear in that 2018 revision, did not change the substance of the applicable law.). If hired prior to July 1, 2007, the applicant is required to have four years of service credit, but after that date the requirement is eight years of service credit. *Id.* Stakelum was hired June 1, 2005, and had 8.75 years of service, thereby meeting the four-year requirement.

[2] The statute was amended in 2016 to add to subsection (1)(b) the particular language requiring "sufficient objective medical evidence" and the list of what "objective medical evidence" includes. But this was not a new requirement for applicants. Rather, applicants had already been required to provide sufficient objective evidence according to PERS Board Regulation 45A, Section 105.

arbitrary nor capricious is "not whether there was evidence in support of [the PERS applicant's] disability, but whether there was substantial evidence to support the finding of the administrative agency." *Pub. Emps.' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 892 (¶12) (Miss. 2001). Substantial evidence is "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶13) (Miss. 2000).

¶16. Stakelum attacks the PERS ruling in five ways, arguing: (1) her physicians identified disabling and painful conditions; (2) PERS failed to consider her testimony regarding disabling pain, its effect upon her ability to perform her job, and her inability to fire a gun; (3) the opinion of PERS's physician, Dr. Mister, and physical therapist, Roll, only considered her ability to perform sedentary level work; (4) the circuit court failed to consider the finding of disability by the Social Security Administration (SSA); and (5) the PERS decision does not explain its reasoning.

## I. The PERS's decision was supported by substantial evidence.

¶17. Stakelum asserts that PERS's decision is not supported by substantial evidence because her physicians identified disabling and painful conditions. She supports her argument by listing a series of observations by treating physicians. Conditions that cause chronic pain can support a finding that a PERS applicant is disabled. *See Pub. Emps.' Ret Sys. v. Waid*, 823 So. 2d 595, 598 (¶10) (Miss. Ct. App. 2002); *Howard v. Pub. Emps.' Ret. Sys.*, 971 So. 2d 622, 623-24 (¶1) (Miss. Ct. App. 2007).

¶18. In *Waid*, PERS appealed a circuit court ruling reversing its decision to deny disability

7

benefits. *Waid*, 823 So. 2d at 596 (¶1). The claimant was found to have severe, chronic fibromyalgia; severe anxiety-depression; and other chronic and severe conditions. *Id.* at 598 (¶10). This Court held that PERS's decision was not supported by substantial evidence and cited three key reasons for its holding: (1) the claimant's former employer stated she could no longer perform her job due to pain; (2) treating physicians identified chronic and severe conditions and considered her permanently disabled; and (3) she missed substantial time from work due to her pain. *Id.* at (¶¶9-11).

¶19.    Similarly in *Howard*, a kindergarten teacher appealed a circuit court's ruling affirming PERS's decision to deny her disability benefits. *Howard*, 971 So. 2d at 623 (¶1). The teacher suffered from chronic pain, weakness, and fatigue due to severe fibromyalgia. *Id.* at 623-24 (¶1). This Court reversed the circuit court's ruling, finding PERS's decision to be arbitrary, capricious, and not supported by substantial evidence. *Id.* at 627-28 (¶15). In making this finding, we relied on the fact that her physician noted she had a permanently debilitating case of fibromyalgia, and no other medical examiner contradicted the diagnosis. *Id.* at 628 (¶15).

¶20.    The medical conditions and complaints of pain in *Waid* and *Howard* are similar to this case. However, the decisions in *Waid* and *Howard* were not based solely on the finding of chronic pain. Importantly, in these cases there were findings that the conditions were actually disabling and likely permanent. In both *Waid* and *Howard*, the PERS applicant had at least one physician to confirm that the severe conditions causing chronic pain were disabling and likely permanent. For instance, in *Howard*, the doctor confirmed there was a

8

"permanently debilitating case of fibromyalgia." *Id.* In *Waid*, multiple doctors stated the claimant would no longer be able to work because of her disabling conditions. *Waid*, 823 So. 2d at 598 (¶10).

¶21. This case is different. Stakelum has a variety of conditions that may very well be painful to her. But the only tests conducted by any treating physician that could explain the levels of pain Stakelum said she was experiencing were her lumbar and cervical spine MRIs. Yet, Dr. Francavilla found the lumbar disc had *improved* from 2011 to 2013, no longer caused any nerve damage, and did not require surgery. Both Dr. Francavilla and Dr. Ross found her cervical disc disease to be mild. Dr. Bazzone listed her prognosis as "improvement expected."

¶22. While Dr. Ross's reports can support the existence of a disability, her conclusions indicated that Stakelum's conditions were not likely permanent. On the PERS Form 7, the doctor listed Stakelum's conditions as "severe." She also provided that Stakelum would be unable to do prolonged standing, lifting, or bending. Dr. Ross provided the same restrictions on the FMLA form, as well as noting that her conditions would cause episodic flare-ups. Yet, the doctor determined she was not at MMI, and her prognosis for recovery was "unknown." She also believed Stakelum would miss work only two to three times per month.

¶23. Unlike the claimants in *Waid* and *Howard*, no physicians confirmed that Stakelum's conditions were permanently disabling, and in fact, some physicians acknowledged the likelihood that her conditions were not permanent. Therefore, despite the fact that Stakelum was diagnosed with medical conditions and experienced pain because of them, the record

9

supports that her medical conditions were not permanently disabling.

**II.   PERS's decision that Stakelum's finger injury was not disabling is supported by substantial evidence.**

¶24.    Stakelum argues that PERS failed to consider the injury to her left second finger and how it affects her ability to perform her job—specifically her ability to fire a gun. Yet PERS did address the finger injury. PERS's decision pointed out that her finger contained no fractures. The PERS decision also noted that Dr. Thriffiley did not believe her injury caused the amount of pain of which she complained. Instead, he believed most of Stakelum's pain was "neurogenic," meaning her pain was "induced or modified by nervous factors," rather than caused by physical trauma. Throughout Dr. Thriffiley's notes, he found her left second finger had both good range and good strength.

¶25.    Furthermore, while the finger's prognosis for recovery was "poor" and had reached MMI, her doctor assigned a permanent-partial-impairment rating of only one percent for the finger and zero percent for Stakelum as a whole. He also stated her restrictions were not firing a gun and not lifting over five pounds. However, he provided on her workers' compensation evaluation that the five-pound restriction was for her *left* arm. Stakelum testified before the Board that she is *right-handed*. Regardless of the pain she suffered, there is substantial evidence to support PERS's conclusion that her finger injury did not constitute a disabling condition.

**III.   PERS's reliance on Dr. Angel Mister and Douglas Roll was not arbitrary and capricious.**

¶26.    Stakelum argues that PERS erred in relying on Dr. Mister and Roll because they only

considered her ability to perform sedentary or light-level work instead of the level of work required for her job as a senior MDOT enforcement officer.

¶27. The FCE did not assess sedentary or light-level work specifically but tested her ability to perform various tasks. Additionally, the pain questionnaire did not target sedentary or light-level work but the pain Stakelum experienced. There is no evidence in the record that Dr. Mister or Roll based their conclusions solely on whether Stakelum could perform sedentary or light-level work.

¶28. Stakelum also argues that Roll's opinion should not be considered because he is a physical therapist, not a physician. Stakelum cites no case law or legal rule as to why a physical therapist's opinion should not be credible in a PERS decision. Failure to cite to authority results in waiver of the argument. M.R.A.P. 28(a)(7); *see also Norwood v. Miss. Dep't of Emp't Sec.*, 105 So. 3d 408, 410 (¶5) (Miss. Ct. App. 2012).

¶29. Because Stakelum has not produced a persuasive reason why PERS should not have relied on Dr. Mister or Roll, PERS's reliance on their conclusions was not arbitrary or capricious.

### IV. The Social Security Administration's findings were outside the record.

¶30. Stakelum argues the circuit court erred in not considering the Social Security Administration's (SSA) finding that she was entitled to disability benefits. While Mississippi law allows an appeal from PERS to the circuit courts, "[s]uch appeal shall be made *solely on the record before the board* and this procedure shall be the exclusive method of appealing determinations of the board." Miss. Code Ann. § 25-11-120(2) (Rev. 2018) (emphasis

11

added).

¶31.    PERS made its decision in February 2015, and the SSA decision came almost a year later.  The SSA decision was not contained in the record, so it was not subject to review by the circuit court.  We also note that "PERS is not bound by any finding of the [SSA]."  *Pub. Emps.' Ret. Sys. v. Stamps*, 898 So. 2d 664, 675 (¶35) (Miss. 2005).

> **V.    PERS's decision explained its reasoning for denying Stakelum's application.**

¶32.    Stakelum last argues that PERS did not explain its reasoning for denying her non-duty-related benefits.  The Mississippi Supreme Court has rejected PERS's decisions where the agency failed to explain its reason for denying benefits, since "administrators [must] say at least minimally why they do what they do so someone can see whether it [is] arbitrary or capricious."  *Marquez*, 774 So. 2d at 429 (¶30).

¶33.    In *Marquez*, PERS denied a special education teacher permanent disability benefits.  *Id.* at 424 (¶8).  She suffered from several medical conditions, including depression and fibromyalgia, and offered evidence showing her physicians did not believe she was employable.  *Id.* at 426 (¶¶17-19).  PERS concluded that the record was insufficient to support her claim.  *Id*. at (¶15).  Our Supreme Court found PERS's decision arbitrary and capricious, because it only stated that the teacher lacked sufficient "objective" medical evidence without providing any reason for its denial.  *Id.* at 429 (¶31).  The Court held that in the face of her evidence, the PERS decision was "simply not substantiated by the record."  *Id.*

¶34.    In contrast to *Marquez*, here PERS did provide support for its decision.  PERS

12

provided multiple examples from the record as to why it believed Stakelum's claim lacked sufficient objective medical evidence. For instance, the decision pointed out that CT and MRI scans produced only minor diagnoses; the physical therapist believed Stakelum did not put forth effort in performing the FCE; Dr. Francavilla saw improvement in Stakelum's lumbar spine MRI and did not believe surgery was an option; and several physicians reported that her physical exams produced mostly normal results with only mild problems. The decision includes more examples. Because PERS provided facts from the record to support its decision, we cannot find that the agency failed to explain its reasoning.

¶35. Stakelum further asserts her case is similar to this Court's finding of permanent disability in another case where a PERS applicant suffered from similar back pain and was given similar work restrictions. *Pub. Emps.' Ret. Sys. v. James*, 214 So. 3d 1067, 1068-69 (¶8) (Miss. Ct. App. 2016). However, *James* is distinguishable. There, the claimant received a permanent-partial-impairment rating of thirty percent for her lumbar spine and thirty-three percent for her whole person. *Id.* at 1068 (¶7). Stakelum did not receive *any* permanent-partial-impairment rating relating to her back pain. Also, that claimant's prognosis for recovery was "poor." *Id.* Stakelum's prognosis for recovery was "unknown." Finally, in *James* the claimant's employer provided testimony that she could no longer work. *Id.* at 1069 (¶10). Stakelum's employer did not testify. While there may be similarities between the two cases, they are not enough to overcome the evidence favoring PERS's decision.

## CONCLUSION

¶36. Because substantial evidence exists in the record to support PERS's decision to deny

13

Stakelum benefits, the Hinds County Circuit Court's judgment is affirmed.

¶37. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**